IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DOROTHY A. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV372 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Dorothy Davis ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Supplemental Security Income under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed her application for Supplemental Security Income on March 18, 2014, alleging disability beginning August 1, 2007. (Tr. at 11, 184-91.)[1] She subsequently amended her alleged onset date to March 18, 2014. (Tr. at 11.) Plaintiff's application was denied initially (Tr. at 75-89, 111-19), and that decision was upheld upon reconsideration (Tr. at 90-106, 123-32). Thereafter, she requested an administrative hearing de novo before

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #9].

an Administrative Law Judge ("ALJ"). (Tr. at 133-35.) Plaintiff attended the subsequent video hearing on January 5, 2016, along with her attorney and an impartial vocational expert. (Tr. at 11.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 22), and, on March 8, 2017, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her March 18, 2014 application date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from four severe impairments:

> obesity, hypertension, depression, and anxiety.

(Tr. at 13.) The ALJ found at step three that none of these impairments, singly or in combination, met or equaled a disability listing. (Tr. at 14.) Therefore, the ALJ assessed Plaintiff's RFC, and found that she could perform

> light work as defined in 20 CFR 416.967(b) except she can occasionally climb ramps or stairs and never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally balance, stoop, kneel, crouch, or crawl. She can perform simple, routine tasks with occasional interaction with the public and coworkers.

5

(Tr. at 16.) At step four, the ALJ determined that all of Plaintiff's past relevant work exceeded her RFC. (Tr. at 20-21.) However, he concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, she could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 21-22.)

Plaintiff now contends that the ALJ "erred in finding that [Plaintiff] has the [RFC] to perform a reduced range of light work, thereby misapplying the medical vocational guidelines." (Pl.'s Br. [Doc. #12] at 5.) Plaintiff also argues that the ALJ erred at step two "in failing to find that [Plaintiff's] degenerative disc disease with radiculopathy is a severe impairment." (Pl.'s Br. at 9.) After careful review of the record, the Court finds that neither of these contentions merits remand.

A. RFC

Plaintiff challenges the ALJ's RFC assessment on three bases. First, she claims that substantial evidence fails to support the ALJ's evaluation of her symptoms. Second, she contends that the RFC "failed to fully and accurately account for [her] mental limitations in concentration, persistence, and pace," as required by Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). (See Pl.'s Br. at 7-8.) Third, she argues that, had the ALJ found that she could perform sedentary, rather than light, work, "a finding of disabled would have been directed by the Medical-Vocational Guidelines." (Pl.'s Br. at 8-9.) The Court addresses each of these contentions in turn.

1. Symptom Evaluation

Plaintiff first contends that her "credible testimony serves to illustrate that she is unable to work due to chronic severe pain." (Pl.'s Br. at 6.) She urges that her "testimony is strongly supported by the record." In short, Plaintiff challenges the ALJ's finding that her testimony regarding the intensity, persistence, and limiting effects of her symptoms was not entirely consistent with the evidence.

Under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304 (Oct. 25, 207) ("SSR 16-3p"); see also 20 C.F.R. § 404.1529.[4] In Craig v. Chater, the Fourth Circuit addressed the two-part test for evaluating a claimant's statements about symptoms. 76 F.3d at 594-95. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. §§ 416.929(b) & 404.1529(b)). If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider all available evidence, including Plaintiff's statements about her pain, in order to evaluate "the intensity

---

[4] The ALJ's decision is dated March 30, 2016, and the Court therefore considers SSR 16-3p, effective March 28, 2016. See SSR 16-3p n.27 ("Our adjudicators will apply this ruling when we make determinations and decisions on or after March 28, 2016. When a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review.").

and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 595.

This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings" Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

(i) [Plaintiff's] daily activities;

(ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;

(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;

(vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed her demeanor, the ALJ's determination is entitled to deference. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

In the present case, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's

"statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the evidence for the reasons explained in this decision." (Tr. at 17.) Therefore, Plaintiff's challenge hinges on step two of the Craig analysis.

It is undisputed that at step two of the analysis, the ALJ should not reject a claimant's statements "about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [her] statements." 20 C.F.R. § 416.929(c)(2). Thus, "subjective evidence of pain intensity cannot be discounted solely based on objective medical findings." Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017). However, it is also undisputed that a plaintiff's "symptoms, including pain, will be determined to diminish [her] capacity for basic work activities [only] to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(c)(4). Thus, objective medical evidence and other evidence in the record are "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work" and "[a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Hines, 453 F.3d at 565 n.3 (quoting Craig, 76 F.3d at 595); see also SSR 16-3p ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of

9

symptoms, including the effects those symptoms may have on the ability to perform work-related activities."). According to the regulatory guidance:

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities . . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities.

SSR 16-3p.

In the present case, a thorough review of the ALJ's decision and the record as a whole reveals that the ALJ properly considered objective medical evidence and other evidence, and explained that determination in the decision. As recounted by the ALJ,

> [t]hrough reports to the Agency and testimony at her hearing, [Plaintiff] alleged multiple disabling symptoms. She alleged that her impairments affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, see, remember, complete tasks, concentrate, understand, follow instructions, use her hands, and get along with others. She alleged that she had fatigue and difficulty sleeping. [Plaintiff] stated that she had swelling in her hands and legs and increased symptoms of depression and anxiety. She alleged that she had headaches. [Plaintiff] stated that she needed help dressing sometimes, reminders to take her medicine, and did not get along with people like she used to due to pain and depression. She stated that she used a cane that was not prescribed by a doctor. [Plaintiff] testified that she did not drive a lot because it hurt her back to drive. She testified that she sent her grown children to the store for her. [Plaintiff] testified that she was in a car accident in 2007 in which she was injured. She testified that she had carpal tunnel in her hands, arthritis in her legs and hands, and swelling in her feet. She testified that she felt sad and like crying and that she had anxiety attacks. She testified that her husband, who was disabled due to a bulged disc in his back, takes care of her and helped her with things like laundry, getting up and down, getting in and out of the shower, rubbing her back, dressing herself, and tying her shoes.

10

(Tr. at 16-17.) In evaluating Plaintiff's symptoms, the ALJ determined that, despite Plaintiff's "allegations of limitations in every area inquired about in Section D of the Adult Function Report, her medical records do not reflect such extreme limitations." (Tr. at 17). The ALJ then supported this finding as follows:

> While [Plaintiff] seemed stiff on some exams, treating physician Dr. East told her to more around to help avoid stiffness, indicating that Dr. East believed [Plaintiff] to be less limited than alleged. [Plaintiff's] provider described her as in moderate pain and distress at most, and this was only at one visit. [Plaintiff] did not complain of difficulty hearing or seek treatment for a hearing condition. She reported good pain relief with medication, seemingly at odds with the limitations alleged in the Function Report and with testimony that her disabled husband had to care for her. In light of the evidence as a whole, the undersigned finds that [Plaintiff's] allegations are exaggerated in that they are not consistent with evidence showing only modest objective findings and her own reports to her physicians during her course of treatment. Indeed, [Plaintiff's] own medical providers reported that imaging revealed only mild degenerative disc disease. In comparing the statements [Plaintiff] made in connection with her claim for disability benefits with other evidence, including statements from her medical records, the undersigned finds that they are inconsistent with objective medical evidence and other evidence and are therefore less likely to reduce her capacity to perform work related activities.

(Tr. at 17) (citations omitted). Nevertheless, the ALJ acknowledged that Plaintiff's obesity, hypertension, pain, and edema did cause functional limitations. In particular, he determined that,

> [b]ased on the possibility that [Plaintiff] experiences some symptoms due to high blood pressure, as well as decreased functional ability based on her obesity and examinations revealing tenderness in her back, she can occasionally climb ramps or stairs and never climb ladders, ropes, or scaffolds. [Plaintiff's] medical providers also noted that she seemed stiff, had edema distally, and had a slightly antalgic gait, supporting a limitation to occasionally balancing, stooping, kneeling, crouching, or crawling. In determining [Plaintiff's RFC], the undersigned considered all of her impairments, severe and non-severe, as required by SSR 96-8p. The undersigned finds that findings of pain and edema on some exams along with [Plaintiff's] reports of pain radiating to her legs reasonably support a limitation to light work with additional non-exertional limitations.

> However, further physical limitations are not supported. Although [Plaintiff] had edema, it was described as only trace. Moreover, her gait was only *slightly* antalgic, indicating that she was not as limited as alleged. Indeed, [Plaintiff's] allegation of using a cane daily is inconsistent with examination findings noting only slightly antalgic but otherwise normal gait. Such inconsistency indicates that [Plaintiff] has a functional capacity consistent with the findings herein rather than a more limited one. Significantly, although [Plaintiff] reported increased pain at times, she mostly reported good pain relief. For example, in March and May 2014, she reported that she had noticed significant improvement with pain on medications, though she felt that she was suffering quite a bit at the time. Later, she reported that changed dosages of her pain medication helped "a lot" with her pain and that the pain came back when she ran out of the medication. Her medications were refilled, and [Plaintiff] reported good relief of her back pain. Such evidence is inconsistent with [Plaintiff's] allegations of symptom severity because it indicates that her symptoms were adequately controlled with treatment. Of note, Dr. East, [Plaintiff's] treating physician, told her to try to avoid sitting around all of the time and to move around to help avoid stiffness. Such evidence is not consistent with her reported symptoms and limitations therefrom because it shows that [Plaintiff's] own doctor thought she should avoid sitting around excessively. That is, it seems that [Plaintiff's] own doctor thought she should engage in activities more consistent with light rather than sedentary work. Such evidence is consistent with the limited range of light work that the undersigned finds [Plaintiff] can do herein.

(Tr. at 17-18) (citations omitted).

In challenging the above symptom evaluation, Plaintiff argues (1) that her pain was not as well controlled as the ALJ suggests, and (2) that the ALJ misconstrued Dr. East's recommendation that Plaintiff sit less to avoid stiffness. (Pl.'s Br. at 6-7.) However, the ALJ fully and accurately considered Plaintiff's medical records as set out above, including the extent to which her pain was controlled by medications when she took the medications as directed, and Plaintiff has failed to show that the ALJ's determination is not supported by substantial evidence.

With respect to Dr. East, Plaintiff points to a letter from Dr. East dated December 22, 2015, recommending that Plaintiff "be approved for disability." (Tr. at 365.) Plaintiff argues that the ALJ should have relied on this December 2015 opinion from Dr. East, rather than the earlier notation by Dr. East in May 2014 encouraging Plaintiff to "[t]ry to avoid sitting around all the time." (Tr. at 325.) However, the ALJ considered the December 2015 letter at length and gave Dr. East's December 2015 opinion little weight because Dr. East "provides no statement or even indication regarding [Plaintiff's] functional limitations. Without providing some indication of limitations in vocationally relevant terms, the probative value of her opinion is reduced." (Tr. at 19.) The ALJ also noted that medical records from Dr. East's practice "indicate that Plaintiff's degenerative disc disease is only mild" and this evidence "further detracts from Dr. East's opinion." (Tr. at 19.)

Moreover, Dr. East never opined that Plaintiff was limited to sedentary, rather than light, work as Plaintiff suggests. Instead, the treatment records reflect that on two occasions, in December 2014 and February 2015, Plaintiff was described as "sedentary" based on Plaintiff's lack of exercise, and the records further reflect that Plaintiff was "trying to be more active." (See Tr. at 350, 387.) Along with continued walking, Dr. East strongly recommended physical therapy as a means to improving Plaintiff's pain level and functionality, but it does not appear that Plaintiff followed through, despite repeat referrals. (Tr. at 315, 324, 334, 353, 368-70, 372, 374, 377.) Moreover, Plaintiff had been off of her medication for six months in December 2014 (Tr. at 350), and later records reflect that by June 2015 and August 2015, she had good relief from her back pain with her pain medications (Tr. at 382, 374) and Dr. East continued to recommend physical therapy. The ALJ fully considered and addressed these

13

treatment records, including the records cited by Plaintiff (Tr. at 17 (citing Tr. at 386-92)), and Plaintiff has not shown that the ALJ's findings were unsupported by the evidence or based upon an incorrect application of law.

Ultimately, to the extent that the ALJ's conclusion was contrary to Plaintiff's testimony, the ALJ made a determination regarding Plaintiff's symptoms after considering Plaintiff's testimony and the applicable factors at length. Plaintiff has not shown how this symptom evaluation was improper or how the ALJ's determination was unsupported by substantial evidence. To the extent that Plaintiff essentially asks the Court to re-weigh the evidence and come to a different conclusion than the ALJ, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [the claimant] is disabled," but rather, "whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained his decision, and supported that explanation with substantial evidence.

    2.    Concentration, persistence, and pace

Plaintiff next challenges the ALJ's mental RFC assessment. At step three of the sequential analysis, the ALJ determined that Plaintiff has moderate limitations in concentration, persistence, and pace. In Mascio, the Fourth Circuit noted that where such

14

limitations are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. The Fourth Circuit specifically held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638 (quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted).

Here, as in Mascio, the ALJ found moderate limitations in concentration, persistence, or pace at step three of the sequential analysis. (Tr. at 15.) However, when later assessing Plaintiff's RFC, the ALJ determined that Plaintiff "can perform simple, routine tasks with occasional interaction with the public and coworkers." (Tr. at 16.) Plaintiff now argues that these limitations fail to adequately address her ability to stay on task. However, as this Court has previously clarified, the Fourth Circuit's decision in Mascio

> does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision. . . .

15

> An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Tolbert v. Colvin, 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016).

In this case, as in Tolbert, the ALJ sufficiently explained why the RFC sufficiently accounted for Plaintiff's limitations in concentration, persistence, or pace. First, in assessing Plaintiff's concentration difficulties as moderate at step three of the sequential analysis, the ALJ recounted statements from Plaintiff's consultative psychiatric examiner, Dr. Scott Schell, which indicated that, although Plaintiff "failed at some subtraction and judgment tasks on exam," "she was able to sustain concentration," "was oriented to person, place, and time," "could remember five numbers forward," and could "do simple addition." (Tr. at 15, 345-47.) In setting the RFC, the ALJ found that the "psychological consultative examiner noted that [Plaintiff] was oriented to person, place, and time and could sustain concentration" and "[t]his indicates that [Plaintiff] is not more restricted" than found by the ALJ. (Tr. at 18.) The ALJ also noted that the "State agency psychological consultants opined that [Plaintiff] has a moderate limitation in concentration, persistence, or pace." (Tr. at 15, 81, 97.) As the ALJ explained later in his decision, he assigned great weight to the State agency psychological consultant's opinions, both of which concluded that, despite her moderate limitation in concentration, persistence, or pace, Plaintiff could sustain attention for simple tasks and retained "the capacity to perform simple, routine, repetitive tasks in a low social, low stress environment." (Tr. at 19, 82, 86; see also Tr. at 98, 102-03.) Relying on this finding, the ALJ

16

specifically "accounted for [Plaintiff's] ability to tolerate minimal stress by limiting her to simple, routine tasks." (Tr. at 19.)

The ALJ further acknowledged the psychological consultative examination, which noted that Plaintiff's "ability to perform simple repetitive tasks is adversely influenced by widespread pain complaints." (Tr. at 19, 346.) However, the ALJ discounted this conclusion "because, as analyzed above, the record does not provide a reasonable basis for the intensity and persistence of the symptoms [Plaintiff] reported." (Tr. at 19.) The ALJ similarly discounted the psychological consultative examination's finding that Plaintiff's "ability to tolerate stress and pressures associated with day-to-day employment is adversely influenced by physical symptoms," again noting that Plaintiff's physical "[e]xamination findings were modest at most[,] and [Plaintiff] reported relief with medications." (Tr. at 19-20.) Ultimately, the Court finds that the ALJ provided an extended analysis and explanation with respect to the limitations in the RFC, and explained the lack of a need for further limitations in light of the evidence in the record.

3. Application of the Medical-Vocational Guidelines

In Plaintiff's final challenge to her RFC, she contends that, had the ALJ found that she could perform sedentary, rather than light, work, "a finding of disabled would have been directed by the Medical-Vocational Guidelines." (Pl.'s Br. at 8-9.) This argument is inapposite, as the ALJ did not limit her to sedentary work. The ALJ instead found that she was limited to light work, with additional restrictions noted in the RFC, and the ALJ's decision includes an extended explanation of that determination, supported by substantial evidence, as set out

17

above. Thus, Plaintiff has not established any misapplication of the Medical-Vocational Guidelines in this case.

B. Step Two

Plaintiff next contends that the ALJ erred at step two of the sequential analysis by failing to include Plaintiff's degenerative disc disease with radiculopathy among her severe impairments.

> Step two is a threshold determination of whether claimants have a severe impairment (or combination of impairments) that meets the twelve-month duration requirement and significantly limits their ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2010). If the Commissioner finds no severe impairments, the claimant is not disabled and the analysis does not proceed to the other steps. Id. However, if a claimant does have a severe impairment or combination of impairments, the ALJ must consider the effects of both the severe and non-severe impairments at the subsequent steps of the process, including the determination of RFC. See 20 C.F.R. § 404.1523 (2010); SSR 96–8p, 1996 WL 374184, at * 5 (1996); SSR 86–8, 1986 WL 68636, at *5 (1986). If the ALJ proceeds to discuss and consider the non-severe impairment at subsequent steps, there is no prejudice to the claimant. See Thomas v. Commissioner, Soc. Sec. Admin., No. SAG–11–3587, 2013 WL 210626, at *2 (D. Md. Jan. 17, 2013) (finding harmless error where ALJ continued with sequential evaluation process and considered both severe and non-severe impairments); Kenney v. Astrue, No. CBD–10–1506, 2011 WL 5025014, at *5 (D. Md. Oct. 20, 2011) (declining to remand for failure to classify an impairment as severe because it would not change the result).

Rivera v. Astrue, No. CBD-12-1095, 2013 WL 450781, at *7 (D. Md. Aug. 22, 2013). In other words, "[a]s long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." McClain v. Colvin, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (citations omitted). Therefore, in considering the alleged error at step two in this case, the Court also considers the ALJ's analysis at subsequent steps in the sequential analysis.

Here, as noted above, the ALJ identified four severe impairments at step two: obesity, hypertension, depression, and anxiety. (Tr. at 13.) He then categorized Plaintiff's additional impairments, degenerative disc disease, chronic back pain, type two diabetes, headaches, and personality disorder, as "either non-severe or not medically determinable." (Tr. at 14.) Regarding Plaintiff's back impairment, the ALJ further explained as follows:

> [Plaintiff's] medical providers characterized her degenerative disc disease as mild on multiple occasions. Despite reporting occasional instances of increased back pain, [Plaintiff] stated that medications generally helped. For example, when reporting an increased instance of back pain in April 2015, [Plaintiff] stated that her medication was helping "a lot" with the pain. [Plaintiff] subsequently reported good relief of back pain on medication. Even when she complained of increased pain in November 2015, her medical provider declined to increase her dosage of medication and offered a rehabilitation program that [Plaintiff] had previously failed to [attend]. Such evidence indicates that [Plaintiff's] degenerative disc disease and chronic back pain did not cause significant work-related functional limitations.

(Tr. at 14) (internal citations omitted). However, the ALJ also noted that Plaintiff "has severe impairments, and the disability analysis continues." (Tr. at 13.) In setting the RFC, the ALJ specifically "considered all of [Plaintiff's] impairments, severe and non-severe, as required by SSR 96-8p." (Tr. at 17.) As chronicled above regarding Plaintiff's symptom evaluation, the ALJ's decision addressed Plaintiff's back complaints at length in assessing her RFC, and explicitly based the limitation to light work with additional, non-exertional limitations in part on Plaintiff's reported back tenderness and radiating pain. (Tr. at 17.) Because the ALJ discussed and considered Plaintiff's back impairment at subsequent steps of the sequential analysis, any alleged failure to designate the impairment as a "severe impairment" at step two did not prejudice Plaintiff and was harmless.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #11] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #13] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 6th day of April, 2018.

/s/ Joi Elizabeth Peake
United States Magistrate Judge